## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JASON WILLIAMS AND GUNNAR AMOS, individually and on behalf of similarly situated individuals | ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) | Case No. 20 CV 3335 |
|  | ) |  |
| v. | ) |  |
|  | ) | Judge John Robert Blakey |
| PLANET FITNESS, INC., et al. | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jason Williams and Gunnar Amos bring this putative class action against Defendants Planet Fitness, Inc., Pla-Fit Franchise, LLC, PF Logan Square, LLC, PLNTF Holdings, LLC, and Planet Fitness Franchising LLC, alleging that Defendants have violated various state laws by charging them membership fees for access to their fitness gyms even after the COVID-19 pandemic forced those gyms to shut down. Defendants have moved to compel arbitration and dismiss Williams' claims for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), [37], and have moved to dismiss Amos' claims under Rule 12(b)(7) for failure to join an indispensability party, [39]. For the reasons explained below, this Court grants both motions.

## I.      Background

Defendant Planet Fitness, Inc. operates nearly 2,000 fitness centers across the country, maintaining over 10 million members. [27] at ¶ 2. Planet Fitness offers

memberships on either a month-to-month basis—where customers pay a fixed fee every month along with an annual membership fee—or a pre-paid amount for a full year. *Id.* Plaintiffs also name as Defendants Pla-Fit Franchise, LLC; PF Logan Square LLC; PLNTF Holdings, LLC; and Planet Fitness Franchising LLC. *Id.* at ¶¶ 11–15.[1]

On March 17, 2020, Defendants charged Plaintiffs and many of their other members a monthly membership fee for the billing period of March 17 through April 17. *Id.* at ¶ 3. A day later, Planet Fitness announced the closure of all of its corporate stores through March 31 and urged its franchisees to close too. *Id.* at ¶ 4. On March 30, 2020, Planet Fitness extended the closure of its facilities and indefinitely suspended operations of both franchise and corporate locations. *Id.* at ¶ 5. Instead of offering refunds, Defendants offered to credit members' bills or to extend their existing memberships, if and when Defendants reopen. *Id.* at ¶ 25.

Plaintiff Jason Williams has been a member of a Planet Fitness gym in the Logan Square neighborhood of Chicago since 2018. *Id.* at ¶ 34. Under his membership agreement, Williams paid $10 per month in membership fees, in addition to an annual membership fee of $39; these fees were automatically billed via the payment method he provided upon enrollment. *Id.* at ¶ 35; [27-1] at 2. On March 17, Defendants billed Williams' monthly membership fee, but announced the next day

---

[1] The amended complaint does not explain how these Defendants relate to or are affiliated with each other. Defendants assert that: (1) PF Logan Square LLC is a franchisee and current owner of the Planet Fitness-branded club in the Logan Square neighborhood of Chicago, [44-1] at ¶¶ 5, 13; (2) Pla-Fit Franchise, LLC is PF Logan Square LLC's franchisor, *id.* at ¶ 14; (3) PLNTF Holdings, LLC is a holding company that controls multiple Planet Fitness franchisees, including PF Logan Square LLC, *id.* at ¶ 4; and (4) Planet Fitness Franchising LLC is the franchisor of the Planet Fitness gym in Idaho to which Plaintiff Amos belonged, [44] at 27.

the cessation of operations and closure of facilities, barring him from entering the gym. [27] at ¶¶ 36–37. Defendants have not provided Williams with a pro-rated refund for unused services but have instead offered a future credit for the next billing cycle or an extension to his existing membership term. *Id.* at ¶ 38.

Williams' membership agreement contains an arbitration provision stating:

> <u>J) Dispute Resolution</u>: In the unlikely event that Planet Fitness and/or PF Corporate is unable to resolve a complaint you may have to your satisfaction (or is unable to resolve a dispute with you after attempting to do so informally), we each agree to resolve such disputes through binding arbitration or small claims court rather than a court of general jurisdiction. For simplicity and fairness, arbitration will be conducted on an individual basis in accordance with the American Arbitration Association's rules for consumer arbitration. By signing this agreement, you acknowledge and agree that you, Planet Fitness, and PF Corporate are each waiving the right to a trial by jury and the right to participate in a class action, either in court or in arbitration. Nothing in this clause limits Planet Fitness and/or PF Corporate from seeking preliminary injunctive relief from a court in aid of arbitration. This Dispute Resolution provision shall apply to this contract unless, within thirty (30) days of signing this contract, you notify Planet Fitness in writing that you reject this provision.

[27-1] at 3.

The other named Plaintiff, Gunnar Amos, has belonged to a Planet Fitness facility in Coeur d'Alene, Idaho since 2019. [27] at ¶ 42. Under his membership agreement, Amos is automatically billed a month-to-month membership fee of $10.60 and an annual membership fee of $41.34. *Id.* at ¶ 43. Unlike Williams' membership agreement, Amos' agreement does not contain an arbitration provision. *See* [27-2]. Amos entered into his membership agreement with CM3 CDA Silver Lake, LLC dba Planet Fitness (Silver Lake), a non-party to this action. *Id.* at 7. According to a declaration submitted by Reid Lamport, Silver

Lake's Executive Director of Operations, Silver Lake: owns and operates the gym to which Amos belongs; is a limited liability company formed under the laws of Idaho; maintains its principal place of business in Coeur d'Alene, Idaho; does not conduct any business in Illinois and has never registered to do business in Illinois; does not have any employees or maintain any real property in Illinois; and interacted with Amos solely in Idaho. [44-2] at ¶¶ 2–5, 11, 13–14, 18–23.

Plaintiffs claim that Defendants' conduct injured Plaintiffs, who claim to have lost the benefit of their bargain or suffered out-of-pocket losses due to their inability to access the fitness centers which they paid to access. [27] at ¶ 7. Plaintiffs bring a nine-count amended complaint against Defendants. Williams asserts claims on behalf of a putative Illinois sub-class for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Counts I and II) and for violations of the Illinois Physical Fitness Services Act (IPFSA) (Count III); Amos sues on behalf of an Idaho sub-class for violations of the Idaho Consumer Protection Act (ICPA) (Count IV and V); and both Plaintiffs sue for breach of contract (Count VI); unjust enrichment (Count VII); conversion (Count VIII); and declaratory judgment (Count IX). *Id.* at ¶¶ 59–127.

Defendants now move to compel arbitration and to dismiss under Rule 12(b)(3) for improper venue as to Williams. [37]. They also move under Rule 12(b)(7) to dismiss Amos' claims for failure to join Silver Lake as an indispensable party. [39].

## II.    Legal Standard

### A.    Rule 12(b)(3)

Rule 12(b)(3) permits a court to compel arbitration and to dismiss a case for improper venue based upon a valid arbitration agreement. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015).

In 1925, Congress enacted the Federal Arbitration Act (FAA) to counter generalized judicial hostility to arbitration as an alternative to litigation and to allow agreements to arbitrate to be enforced. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, a party may compel arbitration if it can demonstrate: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018); *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). The party opposing arbitration bears the burden of proving the arbitration agreement unenforceable or proving that the claims are unsuitable for arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

Courts look to state contract law to interpret an arbitration agreement. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019). This Court may look beyond the pleadings in evaluating a motion under Rule 12(b)(3). *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809–10 (7th Cir. 2016).

### B.     Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) permits dismissal based upon a plaintiff's "failure to join a party under Rule 19." The purpose of Rule 19 "is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 634 (7th Cir. 2009).

Courts analyze Rule 12(b)(7) motions in two steps, determining first whether the relevant party is one that should be joined, if feasible, under Rule 19(a). *Id.*; *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (citing *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). Second, if the party should be joined but cannot be, then the Court must determine whether the party is indispensable—that is, whether the litigation can proceed in that party's absence under Rule 19(b). *Askew*, 568 F.3d at 635; *Davis*, 268 F.3d at 481.

In ruling on a Rule 12(b)(7) motion, this Court must accept the complaint's allegations as true, but it also may consider extrinsic evidence outside the pleadings. *Davis Cos.*, 268 F.3d at 479–80 nn. 2, 4; *see also Deb*, 832 F.3d at 809.

## III.   Analysis

Defendants move to dismiss Williams' claims for improper venue based upon an arbitration provision contained within his membership agreement [37] and to dismiss Amos' claims based upon his alleged failure to join Silver Lake [39] as an indispensable party to this action. This Court considers each motion in order below.

### A.    Rule 12(b)(3) Motion to Dismiss for Improper Venue

As explained above, courts compel arbitration where: (1) there exists an enforceable written arbitration agreement; (2) the dispute rests within the scope of the arbitration agreement; and (3) one party refuses to arbitrate. *A.D.*, 885 F.3d at 1060. Here, Plaintiff disputes only the first element—enforceability, arguing that the arbitration provision contained within his membership agreement is both procedurally and substantively unconscionable. [48] at 38.

### 1.    Unconscionability

Under Illinois law, a contractual provision may be unconscionable on either procedural or substantive grounds. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777 (7th Cir. 2014). A finding of unconscionability renders a contractual provision invalid, and thus unenforceable, as a matter of law. *Id.* at 778.

Procedural unconscionability refers to "some impropriety during the process of forming the contract depriving a party of meaningful choice." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011) (quoting *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006)). Typically, this occurs where a contractual term "is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). In determining whether an agreement is procedurally unconscionable, this Court considers several factors, including whether each party had the opportunity to understand the terms,

whether a maze of fine print obscured important terms, and all of the circumstances surrounding the formation of the agreement. *Phoenix Ins. Co.*, 949 N.E.2d at 647.

Williams argues that the arbitration provision is not sufficiently conspicuous because Defendants "buried [it] in fine print at the bottom of the membership contract," and nothing on the front page or beginning of the agreement alerted him to the fact that it contains an agreement to arbitrate elsewhere. [48] at 39. This argument is meritless. The arbitration provision is set forth in the same font size and color as the remaining provisions and clearly labeled with the heading "Dispute Resolution." [27-1] at 3. Arbitration provisions need not be emphasized "with any special font of typeface to prevent it from being procedurally unconscionable." *Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) (declining to find an arbitration provision procedurally unconscionable where it was set forth in the same font and size as the remainder of the agreement); *see also Pain Treatment Centers of Illinois v. SpectraLab Sci., Inc.*, No. 15-CV-01012, 2017 WL 4340125, at *4 (N.D. Ill. Sept. 30, 2017) (finding an arbitration clause "clearly labeled along with the other general terms," and thus not procedurally unconscionable); *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 692 (Ill. App. Ct. 2010) (rejecting a procedural unconscionability defense where the challenged arbitration clause was contained in a short document, an introductory subtitle preceded the arbitration clause, and the clause was written in full font).

Moreover, no authority requires an agreement to preview an arbitration provision on its first page, particularly where, as here, the agreement is short—just

two pages long—and well organized, with clearly labeled introductory titles. These factors all weigh against a finding of procedural unconscionability. *All Am. Roofing*, 934 N.E.2d at 692 ("Given the brevity of the documents, their readability, and the placement of the clauses, it was impossible for even a casual reader to miss the arbitration and choice-of-law language.").

Alternatively, an agreement may be substantively unconscionable where contract terms are "so one-sided as to oppress or unfairly surprise an innocent party," or where there exists "an overall imbalance in the obligations and rights imposed by the bargain" or a "significant cost-price disparity." *Jackson*, 764 F.3d at 778 (quoting *Kinkel*, 857 N.E.2d at 267). Williams argues that the arbitration provision is substantively unconscionable because it states that in the "unlikely event that Planet Fitness and/or PF Corporate is unable to resolve a complaint you may have to your satisfaction (*or is unable to resolve a dispute with you after attempting to do so informally*), we each agree to resolve such disputes through binding arbitration," yet the agreement provides no further information about that informal dispute resolution process. [48] at 39 (emphasis added). This argument fails, as no authority requires that an arbitration provision must explain, in detail, an informal dispute resolution process to avoid a finding of substantive unconscionability.

Williams also contends that the arbitration provision is substantively unconscionable because it references rules of the American Arbitration Association (AAA) but does not explain what those rules are, where they can be found, or how arbitration differs from court proceedings. *Id*. Not so. An arbitration agreement

9

expressly incorporating valid, accessible arbitration rules allows plaintiffs to "ascertain the dispute resolution processes and rules to which they were agreeing," thus factoring against a finding of substantive unconscionability. *G&G Closed Circuit Events, LLC v. Castillo*, No. 14-CV-02073, 2017 WL 1079241, at *9 (N.D. Ill. Mar. 22, 2017) (holding that an arbitration agreement incorporating JAMS rules was not substantively unconscionable because it apprised the plaintiff of the rules to which he was agreeing) (internal quotation omitted); *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *5 (N.D. Ill. Mar. 27, 2015) (noting that "AAA and JAMS are experienced arbitral forums with robust and readily accessible dispute procedures"); *see also, e.g.*, *Limon v. ABM Indus. Groups, LLC*, No. 3:18-CV-00701, 2018 WL 3629369, at *6 (S.D. Cal. July 31, 2018) ("Although the AAA rules were not attached to the agreement, the agreement provides Plaintiff with information to access a copy of the rules through the ABM legal department, by phone, or through the internet, suggesting Defendant was not trying to hide the AAA rules from Plaintiff."). Because AAA rules and procedures are easily accessible—for example, through a simple internet search—the membership agreement's reference to the AAA rules precludes a finding of substantive unconscionability.

### 2. Dispute Within the Scope of the Agreement

Having rejected Plaintiff's unconscionability arguments, this Court must determine whether the parties' dispute rests within the scope of the arbitration agreement. *Taylor v. Samsung Elecs. Am.*, No. 16 C 50313, 2018 WL 3921145, at *7 (N.D. Ill. Aug. 16, 2018), *appeal dismissed sub nom. Taylor v. Samsung Elecs. Am.,*

*Inc.*, No. 18-2964, 2018 WL 7575587 (7th Cir. Oct. 2, 2018). It does. The arbitration provision broadly requires both parties to submit to arbitration for any "dispute" that Defendants are "unable to resolve" to Williams' satisfaction. [27-1] at 3. Williams does not argue otherwise, thus waiving any objection on this point. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

### 3. Dismissal or Stay

Finally, once a court finds a valid agreement to arbitrate that encompasses the scope of the relevant claims, it must compel arbitration and either stay the case pending arbitration or dismiss it. *Faulkenberg*, 637 F.3d at 808; *Taylor*, 2018 WL 3921145, at *7.

Defendants request dismissal, [37], and Williams has not argued that this Court should stay the case in lieu of dismissal in the event this Court determines he must arbitrate his claims, *see generally* [48]. Courts in this district favor dismissal where "the entire dispute clearly will be decided in arbitration and thus there is no reason to hold on to the case." *Wallace v. Grubhub Holdings Inc.*, No. 18 C 4538, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019), *aff'd*, 970 F.3d 798 (7th Cir. 2020); *see Hauptman v. Midland Credit Mgmt., Inc.*, No. 1:18-CV-976, 2019 WL 8436961, at *2 (N.D. Ill. Jan. 31, 2019); *Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2017 WL 514191, at *3 (N.D. Ill. Feb. 8, 2017); *Taylor*, 2018 WL 3921145, at *7.

Given that Plaintiff has not demonstrated why a stay would be more appropriate, and because the arbitration clause encompasses all of Williams' claims,

this Court compels arbitration and dismisses his claims without prejudice under Rule 12(b)(3).

## B.    Rule 12(b)(7) Motion to Dismiss for Failure to Join

This Court next considers Defendants' motion to dismiss Amos' claims under Rule 12(b)(7). [39]. As explained above, courts engage in a two-step inquiry under Rule 12(b)(7), asking: (1) whether a party is necessary under Rule 19(a), and if so, whether its joinder is feasible; and (2) if the party is necessary but cannot be joined, whether litigation can proceed in the party's absence, or alternatively, whether it must be dismissed because of the party's indispensability. *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478–79 (7th Cir. 1996).

### 1.    Silver Lake Constitutes a Necessary Party That Cannot Be Properly Joined

At step one, Defendants argue that Silver Lake, the sole counter-party to Amos' membership agreement, is a necessary party under Rule 19(a). [44] at 25. This Court agrees. Relevant here, Rule 19(a)(1)(B) provides that a party is necessary if it "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the [party]'s ability to protect the interest."

Amos' claims all center around Amos' membership agreement in that he seeks damages for fees he claims Defendants unlawfully collected from him pursuant to that agreement. Amos alleges that Defendants violated the ICPA by engaging in deceptive conduct when they "unilaterally altered all of their members' contracts through their policies implemented in response to COVID-19," and by engaging in an

"unfair practice" by collecting those membership fees despite closing. [27] at ¶¶ 88, 95, 97. Amos' claims for breach of contract, unjust enrichment, and conversion all similarly rest upon the allegation that Defendants unlawfully charged for fees while restricting the access granted under the membership agreement, *id.* at ¶¶ 101–17, and he requests an order declaring the membership agreement unenforceable, *id.* at ¶ 125.

Where a plaintiff's claims arise out of contractual obligations, all parties to the relevant contract necessarily claim an interest in the subject of the case and disposing of the case without those parties impairs their ability to protect their interests. *Hall*, 100 F.3d at 479; *see also Chaudry v. Musleh*, No. 17 C 1813, 2018 WL 3361846, at *3 (N.D. Ill. July 9, 2018) (finding a non-party necessary because it is a party to a contract from which the plaintiff's allegations of fraud arose); *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 181 F. Supp. 2d 914, 920 (N.D. Ill.) ("The Seventh Circuit has concluded that a party to a contract is a necessary party under Rule 19(a)."), *aff'd as modified*, 294 F.3d 849 (7th Cir. 2002), *as amended* (July 31, 2002). This is particularly true where, as here, the plaintiff seeks a determination that the relevant contract is void or voidable. *See Hall*, 100 F.3d at 479 (finding it "beyond dispute" that a non-party constitutes a necessary party where the plaintiff seeks a "judicial declaration as to the validity of a contract" to which it is a party); *see also Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992) ("The cases are virtually unanimous in holding that in suits between parties to a contract seeking rescission of that contract, all parties to the contract, and others having a substantial

interest in it, are necessary parties."). This Court thus finds Silver Lake a necessary party under Rule 19(a).

Because Silver Lake is a necessary party, this Court must next consider whether joinder would be feasible in this case. If it is, this Court must order that Silver Lake be joined. *Askew*, 568 F.3d at 635 (citing Fed. R. Civ. P. 19(a)(2)). Here, however, joinder is not feasible because this Court cannot exercise personal jurisdiction over Silver Lake. *See id.* (noting that joinder is infeasible when the addition of the necessary party would destroy complete diversity or where the court lacks personal jurisdiction over the necessary party). The undisputed record shows that Silver Lake is a limited liability company formed under the laws of Idaho; it maintains its principal place of business in Coeur d'Alene, Idaho; it does not conduct any business in Illinois and has never registered to do business in Illinois; it does not have any employees or maintain any real property in Illinois; and its interactions with Amos occurred only in Idaho. [44-2] at ¶¶ 3–4, 11, 13–14, 18–23. Given its complete lack of presence in Illinois, this Court cannot exercise either general or specific personal jurisdiction against Silver Lake. *See Daimler AG v. Bauman*, 571 U.S. 117, 122, 137 (2014) (holding that general jurisdiction exists only where a limited liability company is incorporated or headquartered or where its contacts are so "constant and pervasive" as to render it essentially "at home"); *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (instructing that a court can only exercise specific personal jurisdiction over a defendant who has made "deliberate contact" with Illinois itself).

14

## 2. Silver Lake Is an Indispensable Party

Having determined that Silver Lake constitutes a necessary party that cannot be joined, this Court moves to the final step of the Rule 12(b)(7) analysis, assessing whether, "in equity and good conscience, the action should proceed among the existing parties." *Askew*, 568 F.3d at 635 (quoting Fed. R. Civ. P. 19(b)). If not, this Court must dismiss the case due to Silver Lake's indispensability. *Hall*, 100 F.3d at 479.

The "indispensability" analysis is as straightforward as the "necessary party" analysis: "a contracting party is the paradigm of an indispensable party." *Davis Cos.*, 268 F.3d at 484 (quoting *Hall*, 100 F.3d at 479). Rule 19(b)'s factors confirm this conclusion. The Rule directs this Court to weigh the following factors in deciding whether the case should proceed in the necessary party's absence: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which relief can be tailored to lessen or avoid prejudice; (3) the adequacy of a judgment rendered in the person's absence; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b). All four factors weigh in favor of dismissal.

First, for obvious reasons, a judgment here regarding a contract to which Silver Lake is a party would undoubtedly prejudice Silver Lake. *See Chaudry*, 2018 WL 3361846, at *5 ("An adverse decision finding no fraud underlying the contract or no breach of the contract to which the corporation is a party will obviously prejudice the corporation."). Second, by the same token, due to the nature of Amos' claims—which

center around *Silver Lake*'s rights and obligations under the membership agreement—this Court cannot fashion relief to alleviate that prejudice.

Third, this Court must consider the adequacy of a judgment rendered in Silver Lake's absence. Adequacy in this context refers to the "public stake in settling disputes by wholes, whenever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968)). In this case, adjudicating Amos' claims as to only the remaining Defendants would not be the end of the case: inevitably, Plaintiff would have to sue Silver Lake directly to ensure a binding judgment on the contract to which only Silver Lake and Amos are parties. *E.g.*, *Fiscus v. Combus Fin. AG*, No. CIV.A. 03-1328(JBS), 2007 WL 4164388, at *7 (D.N.J. Nov. 20, 2007) (finding that the third factor weighed in favor of dismissal where the case centered on a non-party's performance under a contract, because the court "could not issue binding order as to the breach of contract claim in the absence of one of the contracting parties"). This factor thus also weighs in favor of dismissal.

Finally, as to the fourth factor, Defendants have asserted that Amos could pursue his claims in Idaho, [44] at 30, and Amos has not disputed this statement. Thus, all factors weigh heavily in favor of finding that this case cannot proceed with Silver Lake, thus rendering it an indispensable party requiring dismissing this case under Rule 19(b).

## IV.     Conclusion

For the reasons explained above, this Court grants Defendants' motion compel arbitration and to dismiss for improper venue under Rule 12(b)(3) [37], and grants Defendants' motion to dismiss for failure to join an indispensable party under Rule 12(b)(7) [39]. Defendants also moved to dismiss the amended complaint under Rule 12(b)(6) [41], but because this Court did not need to consider—and indeed, did not consider—the merits of their Rule 12(b)(6) arguments, it denies that motion [41] as moot. Plaintiffs' amended complaint [27] is dismissed without prejudice in its entirety. Civil case terminated.

Dated:  March 26, 2021

Entered:

John Robert Blakey
United States District Judge

17